Beginning with Sanchez Gomez v. Lynch, we have the odd happenstance of no appearance being made by counsel for petitioner, so we will invite the Attorney General's representative to speak. Good morning, Your Honors. May it please the Court, John Blakely on behalf of the Respondent and Attorney General of the United States. Your Honors, in our brief we focus heavily on the standard of review to apply in these circumstances, but I think perhaps the most important point made in there is that we have to understand what it is that we're asking this Court to review first, and this isn't the typical case that this Court sees most frequently, which is a review of the full-blown proceedings, and most of the time it's a full-blown asylum case and 240 removal proceedings. In addition to that, there are quite a few cases that come before the Court that are withholding only which proceedings, which are either coming from a reinstatement order or from a final administrative order, but those proceedings have, they went through the first part of the screening process here and they found that there was a reasonable fear of persecution, and so there are many of those cases that this Court sees. That's not what we're talking about today. We're talking about a review of the actual screening process, so we have to ask ourselves, well, what else does this Court review that's, or what else is like this screening process? Well, what it's most like is a motion to reopen, and that's something that by statute Congress has said this Court does not have jurisdiction to review. So that doesn't help a lot except to indicate that Congress is comfortable in some circumstances with this sort of screening process not having review in this Court. The next closest thing, it might perhaps be a motion to reopen, a motion to reopen is reviewed by this Court for abuse of discretion, but what's interesting in this context is that in this case, a motion to reopen is not available. So I think that would make it so that it wouldn't be appropriate to review this for abuse of discretion. So we had to look elsewhere because there's nothing clearly defined that would say how this Court should review. And so I think probably the best example is provided in Mason v. Brooks, a case from this circuit that addressed a parole decision where an alien outside the United States wanted to be paroled in so that he could apply for a benefit, very similar to what we're doing in statement proceedings. He's saying that he has a reasonable fear and he is deserving of a full-blown hearing on withholding of removal. And in that case, Mason v. Brooks, this Court has applied the facially legitimate bona fide reason standard. For parole, it doesn't appear, or maybe you can tell me, but it didn't appear that there was any regulatory standard constraining the determination. Is that right? That's correct, Your Honor. It said that's a discretionary decision. Is there any regulation or internal guidelines for how that decision is made? Not that I'm aware of, Your Honor. Because when I looked at the regulations for the reinstatement order and the reasonable fear interview and what it appeared that by regulation, the Attorney General had Well, it has constrained the discretion, but I think, again, there I'm asking you to look at what the actual process is. Normally, when you're talking about withholding a removal in a full-fledged hearing, you've got a hearing where evidence is submitted, where it starts with direct testimony, then cross-examination, and then there's a full-blown administrative review. It's a much smaller hearing and it only goes to the asylum officer and then it can be appealed to the IJ and that's it. But we've said that's akin to, it is a final order of removal that we can review, you know, the reinstatement order we can review via Aguilano, and we have a legal standard that's been set out by regulation. So it seems pretty different from a parole determination. The parallel is not exact and that's the problem that we have here, but I think the other way that this is like a parole is this, that there's a balance of factors here. In the reinstatement statute, Congress has said that we intend this individual to be removed very quickly and they should not have available to them any forms of relief. And then on the other side of the balance, we have our obligations under the Convention against Torture, which is that we not remove somebody who we expect has a probability that they will be tortured, or in the context of just withholding a removal under the INA that they will be persecuted, but that's a clear probability standard. And so we have to balance these two factors and the balance results in a process that's a much shorter process than the full-blown withholding and the removal proceedings. If you were to review this for substantial evidence, the same way that you do review the decision on withholding a removal, then that in effect provides the same sort of proceedings that they would have had if they went right to withholding a removal. How different is it? I mean, frankly, I could understand Congress saying we don't have any authority here. I'm not saying I advocate that, but I could understand the logic of it. I mean, you've noted areas where we don't, but if it's going to come here anyway, I'm not sure what difference the lesser standard of review would make. We still have the whole review process. It's going to take the same amount of time. It may be that that much more deference has to be given to the agency's judgment, but I don't see how it makes the process any more efficient. Well, it's going to require more at the lower levels. If the decision was going to be reviewed for substantial evidence, then that might make the asylum officer feel that they have to collect more evidence and that they have to put together a decision that's far more complex, where this is a screening mechanism. The only decision that's being made is whether there's a reasonable possibility that they will be persecuted. And so what we're asking this Court to do is to just say, has the asylum officer, with the agreement of the immigration judge, stated a reason that's of Congress from the reinstatement statute to move this process along? I think it's also worth noting that this reasonable fear proceeding applies in both for orders of reinstatement removal, like this case, and also to final administrative orders of removal. It applies to both of those. In the statute for final administrative removal orders, Congress states specifically this needs to be done in 14 days, that any review could be sought within 14 days. And then that's it. Congress wanted to move it along quickly. They didn't provide that same justification in that same time period of 14 days in the reinstatement statute. Instead, they said that the executive branch could remove them at any time after the order is reinstated. Can you give me an example of what would constitute a facially legitimate reason? Well, I think this case is an example of a facially legitimate reason. And then a facially illegitimate reason would be where the adjudicator would say, there's no evidence here, there's even no argument that they were persecuted on a protected ground. And then if you look at the evidence, you can see that right on its face, they've alleged persecution on account of membership in a particular social group. So in Villa Aguiano, this court looked to a reinstatement order, and they looked to the underlying removal order, which they're not supposed to do, except they found that there was a gross miscarriage of justice in that case, and that the process would require more because of that gross miscarriage of justice. So I think we have the same sort of situation here, where if you look to the asylum officer determination and you saw that there was a gross miscarriage of justice, there was something clearly facially illegitimate about the decision that the immigration judge makes, then I think that's appropriate. In Villa Aguiano, weren't we looking at the actual original removal order, which had been determined by a court not to be properly obtained? Exactly, Your Honor. And that's what... Whereas here, we're just looking at the reinstatement order and the reasonable fear hearing. The contrast was between that in the context of Villa Aguiano, the court didn't have jurisdiction to look to the order below, but because... But we did anyway. And that's correct, Your Honor, and that's because of the gross miscarriage of justice, which was identified by the district court decision in the criminal case. And we didn't see... Well, the government doesn't have an issue with that right now. In fact, if there was a parallel in this case, in which it was clear that there would be a gross miscarriage of justice, if the immigration judge denied a further hearing because there's no reason to believe that they didn't even claim that they were persecuted on an account of a protected ground, but they had clearly stated that in the facts, that would be a miscarriage of justice. That's facially legitimate. It's not bona fide. Another example would be bad faith. And I think that, if I remember right, that was in the Bustamante case, where they examined to determine if there was bad faith and found that there wasn't. So bad faith would be another grounds to look below. The bottom line, though, is with the facially legitimate bona fide standard, this court can assure that there's no gross miscarriage of justice. And I see that my time is out, unless you have any more questions. Thank you. Well, we thank you for your appearance and helpful comments. The case just argued is submitted.
judges: Clifton, Ikuta, Block